**PACIFIC MILLS v. KENEFICK, Acting Internal Revenue Agent.**

No. 3337.

Circuit Court of Appeals, First Circuit.

Sept. 27, 1938.

John T. Noonan, of Boston, Mass. (O. Walker Taylor and Alex J. McFarland, both of Boston, Mass., on the brief), for appellants.

William B. Waldo, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., Sewall Key, J. Louis Monarch, and M. Leo Looney, Jr., Sp. Assts. to Atty. Gen., and Francis J. W. Ford, U. S. Atty., and Arthur L. Murray, Sp. Asst. to U. S. Atty., both of Boston, Mass., on the brief), for appellee.

Before WILSON and MORTON, Circuit Judges, and PETERS, District Judge.

MORTON, Circuit Judge.

This is an appeal by the original respondents from an order directing them to appear before the Internal Revenue Agent in Charge at Boston and produce books, papers, and records of the Pacific Mills for the years 1918 and 1919. There is no controversy about the facts. Mr. Kenefick, the Agent in Charge at Boston, was directed by the Commissioner of Internal Revenue to make further examination of the books of the Pacific Mills for the tax years 1918 and 1919. Written notice that such an examination was to be made was given by the Commissioner to the Mills. The managers of the Pacific Mills declined to appear as requested or to permit the examination. Thereupon Mr. Kenefick filed the present petition under Revenue Act of 1928, Ch. 852, sec. 617, 45 Stat. 791, 877, 26 U.S.C.A. §§ 1523, 1698, for an order requiring them to appear before him and produce books, papers, and documents as requested. The respondents are the Pacific Mills, Alfred E. Colby, president, Robert Pillow, clerk, and Albert K. Graham, an employee of the Mills. After a full thorough summary hearing the District Judge granted the petition and made the order which is appealed from.

The main ground on which the respondents objected to the granting of the petition was that the Commissioner had no power to order a further examination of the books of the Pacific Mills for the years in question. Several other grounds of objection are also relied on.

The facts have been presented by the Bureau with commendable frankness. In 1922 a thorough and complete examination of the books of the Pacific Mills was made by one of the Bureau's agents for the Commissioner. It took about two and one-half months. All the books, records, and papers of the Pacific Mills were made available to the agent, and all requests by him for information were answered. His report covering some seventy pages is an exhibit. It is not contended that the examination or the report were inadequate or erroneous. There was and is no charge of fraud. It is agreed that the time for any further assessment of taxes for the years in question had long gone by and that all claims for re-

fund had been finally rejected. No questions are open between the Commissioner and the Mills relating to the assessment or refund of taxes for the years in question.

In an entirely different proceeding the Pacific Mills is suing Nichols, a former Collector of Taxes, on an alleged overpayment for 1918 and 1919. It is admitted that the examination requested by the Commissioner is desired for the purpose of rechecking the returns in aid of the defense of this suit. It is thought that some items which were properly taxable may have been inadvertently omitted in computing the tax which was assessed and paid. While no tax can now be assessed with respect to these items, a tax which might have been assessed but was not, is believed by the Commissioner to be available as an offset against the overpayment claimed.

The question is whether the Commissioner has the right to make the proposed examination for this purpose. It is entirely a matter of statute. We are not impressed by the contention that the proposed examination is so unreasonable as to be unconstitutional even if it is within the Commissioner's authority to order it.

 The statute relied on (Revenue Act of 1928, secs. 617, 618, 26 U.S.C.A. §§ 1514, 1523, 1698) gives the Commissioner wide powers to examine books, papers, and records *"bearing upon the matters required to be included in the return"*, and authorizes him to *"require the attendance of the person rendering the return or of any officer or employee of such person"*. These powers are granted (as stated in the statute), *"for the purpose of ascertaining the correctness of any return or for the purpose of making a return where none has been made."* The statutes also provide, *"No taxpayer shall be subjected to unnecessary examinations or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Commissioner, after investigation, notifies the taxpayer in writing that an additional inspection is necessary."* Sec. 1105, Revenue Act 1926, 26 U.S.C.A. § 1521.

The meaning of the decisive section (1105) is reasonably clear. Unnecessary examinations are forbidden; this prohibition is addressed to the Commissioner under whose authority all examinations are made. Only one examination for each year shall be made unless the Commissioner notifies the taxpayer that an additional inspection is

necessary. The first provision amounts to a congressional safeguard of the taxpayer's right not to be harassed by unnecessary examinations. This right is stated in absolute terms. The other part of the section is more explicit and limits the number of examinations to one per year unless the Commissioner certifies that more are necessary,—a safeguard against oppressive action by subordinate officials. Every presumption is to be made in support of the Commissioner's action. But he clearly has no right to impose additional examinations in disregard of the statute, i. e., unnecessary in the performance of his duty as Commissioner. A second examination ordered by the Commissioner without any necessity therefor is an arbitrary abuse of power. Moreover, the authority conferred upon the Commissioner is carefully limited by the statute. He may make examinations only "for the purpose of ascertaining the correctness of any return or for the purpose of making a return where none has been made." The necessity of an additional examination is to be judged with these powers and purposes in mind. As has been stated, no tax for 1918 and 1919 and no claim for refund for these years is pending before the Commissioner; no claim of fraud is made against the appellants; the Commissioner's duty with respect to the years 1918 and 1919 has been fully performed; it is frankly avowed that the purpose of the proposed examination is to obtain evidence in aid of the defense in the suit against Mr. Nichols.

All the evidence desired is obtainable in the usual way open to all litigants. It is said in argument that it will be much more convenient for the defendant Collector to obtain the desired information by examining the books in advance of trial. This may be so. But the Commissioner is not a party to the litigation; and he appears to have no statutory duty in respect to it. We do not think the Commissioner may use his powers of examination to aid the government representative as a litigant in civil proceedings. It has been said that the powers of examination vested in the Commissioner are only for the purpose of making assessments or acting on claims for refunds, and accordingly expire when such purposes have been fulfilled. "It is clear that Congress authorized re-examinations by the Commissioner, and that the only limitations thereon are that such must be made *within four years [i. e.* within the pe-

riod for assessment] [italics supplied] and must be after written notice to the taxpayer after investigation [by the Commissioner] of the necessity for such re-examinations." Stone, J., Holmquist -v. Blair, 8 Cir., 35 F.2d 10, 13. To the same effect Zimmermann v. Wilson, 3 Cir., 81 F.2d 847; Farmers' & Mechanics' National Bank v. United States, 3 Cir., 11 F.2d 348; In re Andrews' Tax Liability, D.C., 18 F. Supp. 804, 807. The right of examination asserted in this case goes much beyond the limitations imposed in these decisions. As a litigant the government stands on a parity with either litigant except as special advantages are clearly accorded it. For these reasons the order appealed from must be quashed and the case remanded with instructions to dismiss the petition. It is unnecessary to consider the other questions argued.

The decree of the District Court is vacated and the case is remanded to that court with instructions to dismiss the petition.