**MARTIN, Internal Revenue Agent, v. CHANDIS SECURITIES CO. et al.**

No. 9735.

Circuit Court of Appeals, Ninth Circuit.

May 29, 1942.

Samuel O. Clark, Jr., Asst. Atty. Gen., Helen R. Carloss and Frank J. Ready, Sp. Assts. to the Atty. Gen., all of Washington, D. C., William Fleet Palmer, U. S. Atty., E. H. Mitchell, Asst. U. S. Atty., Eugene Harpole and Samuel Taylor, Sp. Attys., Bureau of Internal Revenue, all of Los Angeles, Cal., for appellant.

A. Calder Mackay, T. B. Cosgrove, F. J. O'Neil, and F. B. Yoakum, Jr., all of Los Angeles, Cal., for appellees.

Before GARRECHT, MATHEWS, and HANEY, Circuit Judges.

HANEY, Circuit Judge.

The court below, by order, quashed an order it had previously issued requiring appellee Downing to appear on a specified date and produce certain records of appellee Chandis Securities Company. Appeal was taken from the first mentioned order.

In 1916, Mrs. Chandler's husband organized appellee Chandis Securities Company, hereafter called the company, with an authorized capital stock of 500 shares each having a par value of $1,000. The husband then transferred real and personal property to the company in exchange for all its stock. The husband then transferred 200 shares of the stock to Mrs. Chandler, hereafter called the wife, and 280 shares to the eight children. Thereafter the husband transferred other property to the company and received in payment therefor notes bearing interest at the rate of 5% per annum. The husband then assigned the notes to his wife and children in approximately the same proportion as their stock-holdings in the company.

The company kept its books on the accrual basis, but accrued no interest on the notes until December 31, 1923. On that day it executed renewal notes to the wife and children covering principal and all accrued interest. The wife and children, who reported income in their income tax returns on the cash basis, did not report receipt of any interest in their returns for 1923 or previous years. The Commissioner of Internal Revenue assessed deficiencies in taxes for such years on the ground that the wife and children had constructively received the accrued interest. On petition for redetermination, the Board of Tax Appeals decided to the contrary. Marian Otis Chandler v. Commissioner, 16 B.T.A. 1248, decided June 29, 1929.

The company increased its stock to 50,000 shares and changed the par value thereof to $100 per share about October 14, 1929.

On December 18, 1929, the wife and children expressed their willingness to exchange their notes for stock in the company. On the same date, the company passed a resolution authorizing its officers to apply to the California Corporation Commissioner for permission to issue 40,000 shares of its stock to liquidate its outstanding notes. The application was filed on December 20, 1929 and granted on December 26, 1929.

The wife and children surrendered the notes to the company on January 2, 1930, and such notes were cancelled on that day. The stock certificates were not actually delivered until May, 1930.

In their income tax returns for the year 1929, the wife and children, who reported their income on the cash basis, reported none of the interest on the notes as income. The Commissioner assessed deficiencies on the ground that the wife and children had received interest in 1929. On petitions for redeterminations, the Board stated that two issues were presented: "(1) Was the transaction by which petitioners exchanged certain notes and interest for stock consummated in 1929 or 1930? (2) Did the petitioners realize taxable income by reason of such exchange?" The Board found "that the exchange was made in 1930" and did not pass on the second issue, the con-

tentions made with respect to that issue not being stated by the Board. Marian Otis Chandler v. Commissioner, 32 B.T.A. 720. On petition to review, this court sustained the Board, saying among other things: "From no conceivable viewpoint does it appear to us that the involved transaction was consummated prior to 1930". Commissioner v. Chandler, 9 Cir., 89 F.2d 332, 333.

After having given notice to the company, appellant issued a summons to the company and to appellee Downing as Assistant Secretary thereof, to appear before appellant at a designated place on December 11, 1939, and to produce a great many records of the company "for the years 1916 to 1930, inclusive". Appellees declined to obey the summons.

On March 5, 1940, appellant filed in the court below a "Petition For Production Of Records". The petition alleged that the wife's income tax return for the year 1930 was then under investigation by appellant; that appellees had under their control and in their custody certain records bearing upon the matters required to be included in said return; that a summons was served on appellees but appellees refused to obey it; and that appellant prayed for an order requiring appellees to appear before appellant at a designated time and place and produce the records. Other than the allegation to the effect that the wife's return was being investigated, the petition stated no reason for examination of the requested records.

Attached to the petition was an affidavit of one Williams an agent of the Bureau of Internal Revenue, in which he deposed:

"That it is necessary that representatives of the Bureau of Internal Revenue examine the books and records of the Chandis Securities Company for the years 1916 to 1930, inclusive, and question said H. E. Downing, in order to determine whether Marian Otis Chandler committed a fraud against the Revenue by failing to report upon the income tax return filed by her for the calendar year 1930 a large sum of asserted interest income received by her from the said Chandis Securities Company in the year 1930."

On the same day the court issued the ex parte order prayed for.

On March 19, 1940, appellees moved to quash and vacate the order of March 5, 1940, on the following grounds among others: (1) that the time for further

assessment and collection of taxes for the year 1930 had expired prior to the issuance of the order, unless the return was false or fraudulent with intent to evade the tax, and there was no proof or prima facie showing that the return was false or fraudulent with intent to evade the tax; (2) that examination and investigation of such records were unnecessary and in violation of § 3631, Int.Rev.Code, 26 U.S.C.A. Int. Rev.Code § 3631; and (3) that all records requested had already been examined by the Commissioner and his agents in connection with the so-called "interest income".

Attached to the motion was an affidavit of Downing in which he deposed: the facts concerning the previous cases; that on October 3, 1935, the Board decided that the issuance of stock for notes and accrued interest was a tax-free reorganization within the meaning of Section 112(b) (3) of the Revenue Act of 1928, 26 U.S.C.A. Int.Rev. Code § 112(b) (3), and that the note holder did not derive taxable income when he received the stock in Daniel H. Burnham v. Commissioner, 33 B.T.A. 147, affirmed 7 Cir., 86 F.2d 776, certiorari denied 300 U.S. 683, 57 S.Ct. 753, 81 L.Ed. 886; that prior to the exchange of notes for stock, Downing consulted with income tax advisors, of recognized professional standing and ability with respect to the proposed transaction; that he was advised and believed that such transaction would be one by which neither the company nor the wife would have a gain or loss; and that the 1930 return of the wife was prepared under his supervision and was full, true and correct, was made in good faith and was in no sense false or fraudulent.

On April 6, 1940, there were filed two affidavits, one made by Donnally, an agent of the Bureau of Internal Revenue, and the other made by Williams. Donnally stated that in 1931, Downing told him that the notes were cancelled in 1929, and that the notes had been misplaced; and that he relied on Downing's statement in recommending to his superiors that the exchange was taxable in 1929. Williams stated that the reasons why it was necessary to examine the records in question were: (a) to determine how much interest was included in the notes exchanged; and (b) to determine the value of the stock. He attached exhibits to his affidavit.

One of the exhibits was the wife's protest to the deficiency assessment in connec-

tion with her return for 1929, in which she stated that the exchange of the stock for the notes was in 1929 and was "an exempt exchange in connection with a reorganization".

Downing then filed an affidavit denying the statements attributed to him by Donnally. Donnally then filed an affidavit containing a portion of the testimony of Downing before the Board in 1933. The testimony was that Downing had no recollection of the alleged statements he was supposed to have made to Donnally in 1931.

Williams then made an affidavit stating that in 1930 the wife received interest in the approximate amount of $661,000, and failed to report any of it in her return for 1930, and that "* * * Representatives of the Bureau of Internal Revenue, including the affiant, have a strong suspicion that the taxpayer's failure to report or disclose this interest income item was due to a deliberate, willful and fraudulent attempt to evade the tax thereon * * * It is necessary to examine the books and records of the Chandis Securities Company in order to determine definitely whether or not Marian Otis Chandler committed a fraud in connection with her 1930 income tax return."

Also included in the record before us is the wife's first amended petition to redetermine the deficiency assessed in connection with her 1929 return filed with the Board. In such petition she alleged that the exchange took place in 1930, and that it was a tax-free transfer on reorganization. The answer of the Commissioner to that petition denied the allegations as to the time of the transfer.

The court below quashed and annulled the order of March 5, 1940, on the ground, among others, that the petition and the affidavits failed to state facts sufficient to show grounds of suspicion or of probable cause for fraud, and that the necessity for the examination was not shown. This appeal was then taken.

Section 3614(a), Int.Rev.Code, 26 U.S. C.A. Int.Rev.Code, § 3614(a), provides in part: "The Commissioner, for the purpose of ascertaining the correctness of any return * * * is authorized * * * to examine any books, papers, records, or memoranda bearing upon the matters required to be included in the return, and may require the attendance of * * * any

* * * person having knowledge in the premises * * *."

Section 3631 provides in part: "No taxpayer shall be subjected to unnecessary examinations or investigations * * *."

Section 3615(a) provides in part: "It shall be lawful for the collector * * * to summon any person to appear before him and produce books at a time and place named in the summons * * *."

Subdivision (e) of that section provides for an attachment against a person summoned as for a contempt for refusal to obey such summons, but the jurisdiction of the court below was not invoked under that provision but under § 3633 which provides in part: "If any person is summoned under the internal revenue laws to * * * produce books, papers, or other data, the district court of the United States * * * shall have jurisdiction by appropriate process to compel such * * * production of books, papers, or other data."

■ The court below clearly had jurisdiction of the controversy under § 3633 above quoted. The petition sought an order compelling production of the books, records and other data, which the order of the court below denied. Thus the order terminated the particular controversy involved on the merits, and was thus a "final" order of which we have jurisdiction under 28 U.S. C.A. § 225(a). State of Washington v. United States, 9 Cir., 87 F.2d 421, 433.

■■ The Internal Revenue Code contains no provision specifying the procedure to be followed in invoking the jurisdiction of the court below. We believe, as appellant contends, that the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, are applicable. The pleading denominated a "Petition" will be treated as a complaint, there being no provision for a "Petition". Under Rule 8(a), it was necessary for the complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief".

■ The complaint alleged that the income tax return of the wife for 1930 was being investigated; that summons had been issued; and that appellees refused to obey the same. Since collection of taxes for 1930 could not be had without assessment, and since assessment had long since been barred by the statute of limitations (Revenue Act of 1928, § 275, 45 Stat. 791, 26

U.S.C.A. Int.Rev.Acts, page 429,) the complaint wholly failed to state any claim for relief because it failed to state any facts showing that the proposed investigation was not "unnecessary" as provided in Int. Rev.Code § 3631. The order should not, therefore, have been made.

Appellant's rights, if any, are statutory, and to obtain the relief granted by the statute he must bring himself within the terms thereof. United States v. Perryman, 100 U.S. 235, 238, 25 L.Ed. 645. An exception to the statute of limitations mentioned above provides no period of limitation on the collection of taxes in the case "of a false or fraudulent return with intent to evade tax". 26 U.S.C.A. Int.Rev.Acts, page 430. There is no allegation in the complaint either specifically, or of facts showing, that the return of the wife for 1930 was false or fraudulent and made with intent to evade tax.

It is asserted, however, that the affidavits are to that effect. We assume the logical conclusion to be that the complaint must be treated as having raised such issue since such issue was tried. Federal Rules of Civil Procedure, Rule 15(b).

It is appellant's contention that the only showing required (and we assume also that the only allegation required) is a "showing of probable cause, sometimes called reasonable ground for suspicion of fraud". Appellees do not controvert that contention, and we accept it as the test in this case without expressing any opinion as to the soundness thereof.

Does the evidence here show any reasonable ground for suspicion of fraud? We agree with the trial court that it does not. In his third affidavit Williams deposed that representatives of the Bureau of Internal Revenue had "a strong suspicion that the taxpayer's failure to report or disclose this interest income item was due to a deliberate, willful and fraudulent attempt to evade the tax thereon". It is not stated anywhere specifically that such representatives had a "reasonable ground" to entertain such suspicion. Such fact is to be found, if at all, from the evidence that the Bureau of Internal Revenue relied on the wife's position, when the deficiency assessment in connection with the 1929 return was made, that the exchange occurred in 1929, and then changed her position after the two-year statute of limitation had run with respect to the year 1930. It is insisted that such evidence is sufficient to show reasonable cause to suspect that the wife mislead the Bureau so that the statute of limitations would bar any assessment in connection with the 1930 return.

The difficulty with that position is that the wife contended at all times that the transaction was not taxable because it was a reorganization. It is difficult to believe that in making the alleged representation the wife was motivated by either an intent or a desire to mislead the government, when at the same time the wife made another contention which, if sound, would preclude taxation, no matter when the transaction occurred. If the contention, that the transaction was a reorganization, was a mere sham or lacked a reasonable basis, a different conclusion might be reached, but there is no showing to that effect. In fact the only evidence on the issue is the statement of Downing that the wife believed the exchange to be a nontaxable transaction. We think, therefore, that appellant failed to show reasonable grounds for entertaining the suspicion of fraud.

In the foregoing discussion we have assumed that appellees may assert that the investigation and examination are unnecessary. Appellant contends that the wife is the only party who can assert that contention, and since she is not a party to this proceeding, and no relief is sought as against her, appellees are in no position to make the contention in her behalf.

Section 3614(a), Int.Rev.Code, authorizes the instant examination. The authority thus granted is unlimited as to time, place and extent. Section 3631 clearly limits examinations and investigations of a *taxpayer's* books to ones which are necessary. Pacific Mills v. Kenefick, 1 Cir., 99 F.2d 188, 189. The question is whether in investigating the return of one taxpayer, the Bureau may investigate the books of a third person regardless of whether the investigation is necessary or not. In other words, is § 3631 a limitation on the power of the Bureau, or is it merely a personal right available only to the taxpayer?

We believe it is the former and that the Bureau has no power to make an unnecessary examination or investigation. There is no contention that authority for the examination and investigation may be found independently of the statutes cited. We believe such statutes, however, author-

ize only a "necessary" examination or investigation. Therefore appellant has no right to make the examination or investigation here involved, and unless he can show he has the right he is not entitled to relief.

Another point, not discussed by the parties, arises because of the fact that the summons involved herein was not issued by the Collector. No statute is cited authorizing issuance of a summons by one other than the Collector. Whether the summons was invalid because not issued by the Collector is a question upon which we express no opinion.

Affirmed.