**UNITED STATES of America and James M. Vighetti, Special Agent, Internal Revenue Service, Petitioners,**

**v.**

**N. R. WHITE, as Treasurer of Hiram Swank's Sons, Inc., Respondent.**

**Civ. A. No. 69–1244.**

United States District Court,
W. D. Pennsylvania.

March 2, 1970.

509

Leonard Boreman, Baskin, Boreman, Sachs, Gondelman & Craig, Pittsburgh, Pa., for respondent.

Richard L. Thornburgh, U. S. Atty., Pittsburgh, Pa., Jeffrey I. Snow, Atty., Tax Division, Dept. of Justice, Washington, D. C., for petitioners.

## OPINION

DUMBAULD, District Judge.

■ Enforcement is here sought under 26 U.S.C. § 7604 of an internal revenue summons issued under 26 U.S.C. § 7602 by a special agent in the Intelligence Division seeking production of records of a corporate taxpayer. (A corporation of course has no privilege against self-incrimination, Hale v. Henkel, 201 U.S. 43, 74, 26 S.Ct. 370, 20 L. Ed. 652 (1906)).

Defendant has abundantly established by the evidence of internal revenue officials the generally known facts that: the intelligence division's function is to investigate cases of suspected fraud or criminal liability; that ordinary civil audits are made by the audit division; that if the audit division finds any evidence indicating fraud the intelligence division takes over, and the audit division is sidetracked until the intelligence division either withdraws from the case or has completed criminal prosecution; that in a joint investigation the intelligence division has control, and that the policy is, in fairness to the taxpayer as well as to prevent jeopardizing the results of criminal investigation, that wherever there is a possibility of prosecution an intelligence agent is immediately assigned and takes charge of the case, rather than following the practice of allowing the audit division agent to first complete the determination of the amount of tax liability and then having the intelligence division investigate the causes or reasons or motives for the deficiency; and that, after completion of the criminal phase, a case is returned to the *audit division for collection of the* tax due together with civil penalties.

The interesting problem in the case is presented by the further fact that ordinarily (except in cases of perjury, failure to file a return or other unusual circumstances) the existence of tax liability is a necessary part of and condition precedent to the criminal case. It is thus as a preliminary phase of the criminal case that the intelligence division must first concern itself with the establishment of a tax deficiency *überhaupt*.

This being so, how can there ever be an investigation which does not have a dual purpose?

If every investigation has both civil and criminal aspects and objectives, how can any meaning be given to the dichotomy of civil and criminal objectives recognized by the Court of Appeals decision in United States v. DeGrosa, 405 F.2d 926, 928 (C.A.3, 1969)? When can there ever be a criminal case which is solely criminal, which is not also civil, and how can any effect be given in practice to the distinction which the law recognizes in theory?

The government suggests as an answer to these problems that there could be a clear case of improper and solely criminal objective in a situation where a defendant has already been indicted, and the Treasury agent does not act *sua sponte* but at the request of the Department of Justice to gather further evidence to sustain the pending criminal charge and strengthen the prosecution's case. This situation occurred in United States v. O'Connor, 118 F.Supp. 248, 250 (D.Mass.1953); and in Application of Myers, 202 F.Supp. 212, 213 (E.D.Pa. 1962).

Whether this explanation is sufficient presents an interesting question. The

reasons of policy discussed by Judge Wyzanski and Judge Freedman militate against permitting the Treasury to use the power conferred by 26 U.S.C. § 7602 for other purposes than bona fide tax collection, free of any involvement in potential criminal prosecution. The *De-Grosa* case, however, does not go so far.

In view of the shortness of time before the statute of limitations runs, we believe that our best course is to spend no more time in ratiocination but to expedite channeling of the case to the Court of Appeals, so that it may determine what weight is to be given to its language in the light of the facts clearly established by the thorough presentation of evidence adduced in the present record.

We direct enforcement of the summons.